```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  SIMEON TLAPANCO, on behalf of himself,  :
  individually, and on behalf of all others :
  similarly situated,                      :    **MEMORANDUM DECISION AND**
                                           :    **ORDER**
                          Plaintiff,       :
                                           :    21-cv-06341 (BMC)
              - against -                  :
                                           :
  CITY METAL TRADERS, INC., CITY           :
  METAL SUPPLY, INC., CITY SCRAP           :
  METAL, INC., CITY METAL GROUP,           :
  INC., ALAN ROTHMAN, and MICHELE          :
  ROTHMAN,                                 :
                                           :
                          Defendants.      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Simeon Tlapanco has sued four corporate entities that he claims operated together as his former employer and two of its alleged owners. He contends, among other claims, that his employers failed to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"). Before me is plaintiff's motion for conditional approval to proceed with a collective action and for court-facilitated notice under the FLSA. See 29 U.S.C. § 216(b). Because plaintiff has shown that he is similarly situated to the scrap metal workers in his proposed collective, his motion is granted.

## BACKGROUND

Plaintiff worked as a scrap yard clerk and laborer for defendants at their Borden Avenue scrap metal facility located in Long Island City, Queens from January 11, 2021 through February 10, 2021. His primary duties included sorting and weighing metal scraps and picking up orders for his employers throughout Queens. According to his declaration, he worked between forty-

three and fifty-six hours a week with no overtime pay.  Instead, he was paid $15 per hour for every hour worked, including those over forty.

Plaintiff contends that he was not alone in being denied overtime compensation.  He avers that the way his employers "paid [him] for [his] work was the same or similar to the way that [they] paid all of their laborers and workers at their two scrap metal facilities, including various manual workers who performed the same or similar duties as [plaintiff]."  He states that he personally observed "at least eight other laborers/manual workers," including his former co-workers, Sergio and Carlos (last names unknown), "reporting to and leaving the job sites at similar times" as him, and that they "worked the same or a similar amount of hours in a week" as he did.  Plaintiff also recalls speaking to Sergio and Carlos "near the end of a workday during [his] first week of employment at [the employers'] job site on Borden Avenue, about the notion that [the employees] all worked too many hours for not receiving overtime pay."

Plaintiff states that he "noticed some turnover" among defendants' laborers and manual workers because "many employees were upset by the Defendants' pay practices and were scared of what Defendant Rothman would do to them if they complained."  He avers that he observed approximately "five other different people working at the Borden Avenue facility over the course of [his] one month of work, including three people who explained to [him] that they had only just started working there."  Plaintiff also states that, based on his conversations with his former co-workers, the primary language of many of defendants' employees is Spanish.

# DISCUSSION

I. **Conditional Approval**

   A. **Legal Standard**

The FLSA authorizes employees to bring a collective action to recover unpaid overtime compensation on behalf of both themselves and other similarly situated employees. See 29 U.S.C. § 216(b). Because similarly situated employees can become plaintiffs only by filing written consent with the court, see id., courts may employ their discretionary authority to facilitate notice to those employees, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).

Approval of a collective action is a two-step process. See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). At the first step, the court "mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555. Courts often refer to this step as "conditional certification," see, e.g., Weng v. Kung Fu Little Steamed Buns Ramen, Inc., No. 17-cv-273, 2018 WL 1737726, at *1 (S.D.N.Y. March 26, 2018), but I refer to it as "conditional approval," for this terminology avoids confusion with certification of class actions under Federal Rules of Civil Procedure Rule 23. At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555.

This case is at the first step, which requires that plaintiff make "a modest factual showing that he and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (internal quotation marks omitted). "The focus of the inquiry is not on

whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." Beaton v. Verizon New York, Inc., No. 20-cv-672, 2020 WL 5819902, at *2 (E.D.N.Y. Sept. 30, 2020) (alteration adopted and internal quotation marks omitted). "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs . . . share a similar issue of law or fact material to the disposition of their FLSA claims." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020).

To meet his burden of showing that he is similarly situated, a plaintiff must use pleadings, affidavits, declarations, or other evidence to establish a "factual nexus" between his situation and that of the potential opt-in plaintiffs. Fernandez v. On Time Ready Mix, Inc., No. 14-cv-4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014). "[C]ourts have repeatedly emphasized the 'minimal' nature of this burden, as 'the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second [collective action] stage.'" Rosa v. Dhillon, No. 20-cv-3672, 2020 WL 7343071, at *4 (E.D.N.Y. Dec. 14, 2020) (quoting Anjum v. J.C. Penney Co., No. 13-cv-460, 2015 WL 3603973, at *5 (E.D.N.Y. June 5, 2015)); see also Summa v. Hofstra University, 715 F. Supp. 2d 378, 386 n. 6 (E.D.N.Y. 2010) ("Courts regularly grant motions for [conditional approval] based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." (internal quotation marks omitted)).

Although a plaintiff's "burden of proof is low, it is not non-existent" – and conditional approval "is not automatic." Romero v. H.B. Auto. Grp., Inc., No. 11-cv-386, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (internal quotation marks omitted). Even at the

4

conditional approval stage, a plaintiff's burden under § 216(b) "cannot be satisfied simply by unsupported assertions," Myers, 624 F.3d at 555 (internal quotation marks omitted), or with mere "conclusory allegations" in the complaint, Morales v. Plantworks, Inc., No. 05-cv-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006).

**B. Analysis**

Plaintiff seeks conditional approval of a collective action consisting of all non-managerial scrap metal clerks, manual workers, or laborers who worked for defendants and did not receive overtime compensation during the applicable period. To establish an adequate "factual nexus," Fernandez, 2014 WL 5252170, at *1, he relies on the complaint, his own declaration, and complaints filed in actions by other employees of defendants that made substantially similar allegations.[1]

Here, plaintiff has sufficiently established, for the purposes of this motion, that he and several other scrap metal workers and laborers were not paid overtime wages while working for defendants, and that there are similar issues of law or fact material to the disposition of their FLSA claims. He stated that he personally observed "at least eight other" employees who performed similar duties and worked similar hours to him. From "work[ing] with and observ[ing]" these other employees, plaintiff learned that defendants paid him for work in "the same or similar way that [they] paid all of their laborers and workers at their two scrap metal facilities." He also details one conversation that he had with two of his former co-workers, Sergio and Carlo, where they discussed that they all worked too many hours without overtime.[2]

---

[1] In Cabrera v. City Scrap Metal, Inc., No. 1:21-cv-05601 (E.D.N.Y.) and Morales v. City Scrap Metal, Inc., No. 1:19-cv-06682 (E.D.N.Y.), manual laborers who worked for defendants brought similar claims for unpaid overtime against defendants.

[2] Although this is hearsay, in the context of conditional approval, it may be relied upon in support. See Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011) ("[C]ourts in this Circuit regularly rely on [conclusory

5

Plaintiff provides the context, the content, the parties involved, and the approximate date and time of the conversation. These details are enough to show that his personal observations are not merely speculative or generalized. As plaintiff has met his minimal burden, the Court conditionally approves the collective to include scrap metal clerks, manual workers, and other laborers whose duties were similar to those of plaintiff.

Defendants argue that plaintiff's evidence is insufficient. But courts in this circuit have "routinely granted conditional [approval] based solely on the personal observations of one plaintiff's affidavit." Hernandez v. Bare Burger Dio Inc., No. 12-cv-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013). Indeed, plaintiff offers more detail in his declaration than in other cases in which courts have rejected conditional approval. See Sanchez v. JMP Ventures, LLC, No. 13-cv-7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional approval where the plaintiff did not provide *any* details regarding his "observations" and "conversations" with other employees): Ikikhueme v. CulinArt, Inc., No. 13-cv-293, 2013 WL 2395020, at *2-3 (S.D.N.Y. June 3, 2013) (denying conditional approval where plaintiff "made no allegations regarding the responsibilities or pay practices of [other employees]"). Here, plaintiff provided "details about [his] observations and conversations, such as where and when they occurred and the names of the employees involved." See Hickmon v. Fun & Fit LLC, No. 20-cv-10270, 2021 WL 3578296, at *5 (S.D.N.Y. Aug. 13, 2021).

Defendants also contend that plaintiff was not paid overtime because he failed to provide a Social Security Number to defendants at the start of his employment, which prevented the payroll system from processing his wages. Therefore, defendants argue, if any collective is to be

---

allegations and hearsay in a named plaintiff's affidavit] to determine the propriety of sending a collective action notice." (internal quotation marks omitted)).

6

approved, it should be limited to employees who failed to provide a Social Security Number. But the Court will not resolve these sorts of factual disputes at this stage. See Barrett v. Forest Lab'ys, Inc., No. 12-cv-5224, 2015 WL 5155692, at *2 (S.D.N.Y. Sept. 2, 2015) ("[A]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." (internal quotation marks omitted)). And even if defendants have a defense unique to plaintiff, "if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims" – as plaintiff has shown – "dissimilarities in other respects should not defeat collective treatment." See Scott, 954 F.3d at 516.

## II. Notice

Plaintiff has also requested that court-facilitated notice be permitted. See Hoffmann-La Roche, 493 U.S. at 169. "[T]he district court maintains broad discretion over the form and content of the notice." Diaz v. New York Paving Inc., 340 F. Supp. 3d 372, 386 (S.D.N.Y. 2018) (internal quotation marks omitted). In making this determination, courts are "guided by the goals of the notice to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012). The Court holds that the notice materials provided by plaintiff should be sent to all potential members of the collective as set forth below.

### A. Length of Notice Period

The FLSA has a three-year statute of limitations for willful violations and a two-year statute of limitations for non-willful violations. See 29 U.S.C. § 255(a). Defendants propose a two-year look-back period for notice, arguing that plaintiff has failed to allege any facts to

7

establish a willful violation. But plaintiff has alleged willfulness, and the Court is not going to resolve that issue at this stage. See Velasquez v. Digital Page, Inc., No. 11-cv-3892, 2014 WL 2048425, at *10 (E.D.N.Y. May 19, 2014) (rejecting a two-year period). Therefore, the Court will allow a three-year look-back period for notice and requests for information.

### B. Start of Notice Period

The notice period under the FLSA "generally should be measured from the date of the court's order granting the motion for conditional [approval], not from the date that the complaint was filed." Ritz v. Mike Rory Corp., No. 12-cv-367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013). This is because the statute of limitations runs for opt-in plaintiffs until the "date on which [their] written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256(b). Therefore, a look-back period beginning on the date of the court's order authorizing notice is usually sufficient to sweep in all possible putative plaintiffs who may later opt-in.

Plaintiff requests that "the statute of limitations of each putative collective member's FLSA claims [be tolled] until the date that the Court resolves [his motion for conditional approval]." Ordinarily, the Court would deny this sort of boilerplate request for equitable tolling, which is not supported by any specific reasons as to why tolling is necessary "to avoid inequitable circumstances." See Yahraes v. Restaurant Assocs. Events Corp., No. 10-cv-935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). Nonetheless, "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." Id. (internal quotation marks omitted). And "[w]hile plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and

their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings." McGlone v. Cont. Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations in FLSA collection action).

Accordingly, the Court tolls the statute of limitations for opt-in plaintiffs from April 18, 2022, which is 60 days after the date that plaintiff's motion for conditional approval became fully briefed,[3] until the date of this Order. Therefore, any disclosed information shall cover only those putative collective members employed within three years of April 18, 2022, and notice may only be distributed to those persons.

### C. Method of Dissemination

Plaintiff requests dissemination of notice via mail, e-mail, and text message, with a reminder notice to follow within 30 days of the initial mailing via the same methods. Plaintiff has also requested that defendants post notice at their Borden Avenue facility. The parties agree that mail is an appropriate method for dissemination of both the initial and reminder notices. They disagree regarding the appropriateness of disseminating the notices via e-mail, text message, and posting.

Courts in this Circuit have consistently allowed plaintiffs to send out collective notice via electronic means, including e-mail and text message. See, e.g., Panora v. Deenora Corp, No. 19-cv-7267, 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020) (permitting notice via email and text message). "Generally, courts allow such dissemination [via electronic means] where the nature of the employer's business facilitated a high turnover rate among employees." Park v. FDM Grp. Inc., No. 16-cv-01520, 2019 WL 2205715, at *7 (S.D.N.Y. May 22, 2019) (internal

---

[3] 60 days is a reasonable amount of time that it should have taken the Court to rule on the motion.

9

quotation marks omitted); see also Ni v. Red Tiger Dumpling House, No. 19-cv-3269, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020) (authorizing the dissemination of notice by email and text where plaintiffs provided evidence of a high rate of turnover).  In his declaration, plaintiff states that in the short period that he was employed, he noticed "some turnover," including observing "three people who explained to [him] that they had only just started working."  This is sufficient to demonstrate high turnover, and I will allow dissemination of the initial and reminder notices via e-mail and text message.

Plaintiff also requests that the Court require defendants to post the notice in a conspicuous location at the Borden Avenue facility where potential similarly situated employees congregate and work.  This request is granted.  "Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."  Guo Qing Wang v. H.B. Restaurant Group, Inc., No. 14-cv-813, 2014 WL 5055813, at *6 (S.D.N.Y. Oct. 7. 2014).  Accordingly, "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."  Id. (internal quotation marks omitted).

Plaintiff's request that all notices be distributed in English, Spanish, or any other language identified by defendants as the primary language of a putative opt-in is also granted.  Defendants do not oppose this request, and courts routinely "permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs."  See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 76 (E.D.N.Y. 2016).

### D. Production of Contact Information

Finally, plaintiff asks that the Court order defendants to produce "[a] computer-readable data file containing the names, last known mailing addresses, all known home and mobile

telephone numbers, all known email addresses, work locations, dates of employment, compensation rates, and primary languages of all potential collective action members who worked for Defendants at any point from November 12, 2015 to the present."[4]  I agree with defendants that this request is overbroad insofar as it requests work locations, dates of employment, and compensation rates.  See, e.g., Beaton, 2020 WL 5819902, at *5 (plaintiff's request for "names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers" overbroad).  Plaintiff's request is also overbroad in requesting information going back to 2015, which is outside of the three-year notice period.  But for the reasons discussed above, defendants are required to disclose information necessary to facilitate providing notice to potential members of the collective by mail, e-mail, and text message.  Therefore, defendants shall disclose the full names, last known mailing addresses, telephone numbers,[5] email addresses, and primary languages for all potential putative class members to the extent they have that information.  The information need cover only those employed within three years of April 18, 2022.

---

[4] Defendants argue that "plaintiff's request for . . . social security numbers" and "birth dates" is "overly broad and invasive."  I would agree, but I am not sure that defendants are reading the same motion as I am.  Nowhere can I discern a request from plaintiff for any such information.  In fact, defendants are the ones requesting that the Court require them to include information only for putative class members who "failed to provide Defendants with a real Social Security Number."  As discussed above, the Court will not resolve that dispute at this stage.  Moreover, discovery regarding social security numbers is generally not appropriate in this context.  See, e.g., Uto v. Job Site Servs. Inc., 269 F.R.D. 209, 211-12 (E.D.N.Y. 2010).

[5] Plaintiff may use these telephone numbers to send notice via text, but plaintiff may not initiate or follow up with potential opt-in plaintiffs via voice calls.

## CONCLUSION

Plaintiff's motion for conditional approval of a collective action is GRANTED to the extent set forth above. The Court further ORDERS that:

- Within 14 days of entry of this Order, defendants shall produce a computer-readable data file including the full names, last known mailing addresses, telephone numbers, email addresses, and primary languages for members of the putative collective;
- Plaintiff's proposed Notice of Pendency and Consent to Join forms are approved, subject to the modifications discussed in this Order;
- Within 30 days after the entry of this Order, plaintiff shall cause a copy of the Notice of Pendency and Consent to Join form to be disseminated to the putative collective.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       February 24, 2023